1   Bernard James Fitzpatrick (SBN 129056)
Bjfitzpatrick@fandslegal.com
2   Charles Swanston (SBN 181882)
Cswanston@fandslegal.com
3   Fitzpatrick Spini & Swanston
555 S. Main Street
4   Salinas, CA 93901
Telephone:   (831) 755-1311
5   Facsimile:    (831) 755-1319

6   Patrick Darryn Toole (SBN 190118)
Ptoole@wjhattorneys.com
7   John Patrick Kinsey (SBN 215916)
Jkinsey@wjhattorneys.com
8   Wanger Jones Helsley PC
265 E. River Park Circle, Ste. 310
9   Fresno, CA 93720
Telephone:   (559) 233-4800
10   Facsimile:    (559) 233-9330

11   Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
12   Shooka Moallem (SBN 259106)
Shooka.Moallem@capstonelawyers.com
13   Capstone Law APC
1840 Century Park East, Ste. 450
14   Los Angeles, CA 90067
Telephone:   (310) 556-4811
15   Facsimile:    (310) 943-0396

16   Attorneys for Plaintiff Mayalinda Bernal

17             UNITED STATES DISTRICT COURT

18           NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19   MAYALINDA BERNAL, on behalf of herself and all others similarly situated,<br><br>20                 Plaintiffs,<br><br>21<br><br>22       vs.<br><br>23   DAVITA, INC., doing business as DAVITA SOLEDAD DIALYSIS; SOLEDAD DIALYSIS CENTER, LLC doing business as SOLEDAD DIALYSIS; MARIAH SILVA; and<br>24   DOES 1 through 50, inclusive,<br>25<br>26             Defendants.<br>27 | Case No. CV-12-3255 LHK (PSG)<br><br>Assigned for All Purposes to the Honorable Lucy H. Koh<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       September 5, 2013<br>Time:       1:30 p.m.<br>Place:       Courtroom 8 |

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 5, 2013 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-captioned court, located at 280 South 1st Street, San Jose, CA 95113, the Honorable Lucy H. Koh presiding, Plaintiff Mayalinda Bernal will, and hereby does, move this Court to:

1.     Preliminarily approve the settlement described in the Joint Stipulation of Settlement and Release ("Settlement Agreement" or "Agreement") and the Notice of Class Action Settlement, attached collectively as Exhibit A to the Declaration of Patrick D. Toole;

2.     Conditionally certify the Settlement Class;

3.     Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

4.     Appoint Mayalinda Bernal and Diabanza Lusakiovo as Class Representatives;

5.     Appoint Fitzpatrick, Spini & Swanston; Wanger Jones Helsey PC; and Capstone Law APC as Class Counsel;

6.     Appoint Gilardi & Co., LLC as the Claims Administrator; and

7.     Set a hearing date for final approval of the Settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Patrick D. Toole; (4) the Declaration of Bernard James Fitzpatrick; (5) the Declaration of Charles Swanston; (6) the Declaration of Raul Perez; (7) the Declaration of Mayalinda Bernal; (8) the Declaration of Diabanza Lusakiovo; (9) the Settlement Agreement; (10) the Notice of Class Action Settlement; (11) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (12) the

records, pleadings, and papers filed in this action; and (13) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  July 19, 2013

Respectfully submitted,

Capstone Law APC

By: _____
Raul Perez
Shooka Moallem

Bernard James Fitzpatrick
Charles Swanston
Fitzpatrick Spini & Swanston

Patrick Darryn Toole
John Patrick Kinsey
Wanger Jones Helsley PC

Attorneys for Plaintiff Mayalinda
Bernal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  FACTS AND PROCEDURE .................................................................... 3

    A.  A Brief History of California's Wage and Hour Laws ........................ 3

    B.  Overview of the Litigation .................................................................. 4

    C.  The Parties Settled the Claims at Mediation ...................................... 6

    D.  The Proposed Settlement Fully Resolves Plaintiff's Claims ................ 6

        1.  Composition of the Class ............................................................ 6

        2.  Settlement Consideration ........................................................... 6

        3.  Formula for Calculating Settlement Payments............................ 7

        4.  Release by Class ......................................................................... 7

III. ARGUMENT ........................................................................................... 8

    A.  The Proposed Class Action Settlement Should Receive

        Preliminary Approval ...................................................................... 8

        1.  Courts Review Class Action Settlements to Ensure That the

            Terms Are Fair, Adequate, and Reasonable.................................. 8

        2.  The Settlement Was Reached Through Arm's-Length

            Bargaining ................................................................................ 10

        3.  The Settlement Was Based on Facts Uncovered Through

            Investigation, Formal Discovery, and Preparation for

            Mediation................................................................................. 10

        4.  Counsel Is Experienced In Similar Litigation............................ 13

        5.  The Settlement Was Achieved After Evaluating the Strengths

            of Plaintiffs' Case and the Risks, Expense, Complexity, and

            Likely Duration of Further Litigation ......................................... 13

    B.  The Proposed PAGA Payment Is Reasonable .................................... 15

C.   The Proposed Payments to the Class Representatives Are
     Reasonable ....................................................................... 15

D.   The Negotiated Attorneys' Fees and Costs Are Reasonable ............... 17

E.   Conditional Class Certification Is Appropriate for Settlement
     Purposes ........................................................................... 18

     1.   The Proposed Class Meets the Requirements of Rule 23............. 18

     2.   The Proposed Class Is Sufficiently Numerous and
          Ascertainable .............................................................. 18

     3.   There are Questions of Law and Fact that Are Common to
          the Class..................................................................... 19

     4.   The Putative Class Representatives' Claims Are Typical of
          the Proposed Settlement Class........................................ 21

     5.   Plaintiffs and Plaintiffs' Counsel Will Adequately Represent
          the Interests of the Proposed Settlement Class ............................ 22

     6.   Common Issues Predominate Over Individual Issues................. 23

     7.   Class Settlement Is Superior to Other Available Means of
          Resolution.................................................................... 25

F.   The Proposed Class Notice Adequately Informs Class Members
     About The Case And Proposed Settlement ......................................... 25

IV.  CONCLUSION.......................................................................... 27

1

# TABLE OF AUTHORITIES

2

3     **FEDERAL CASES**

4     *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................ 18

5     *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................ 22

6     *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) ........................... 16

7     *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................... 9

8     *Consolidated Rail Corp. v. Town of Hyde Park*,

9          47 F.3d 473 (2d Cir. 1995) .......................................................................... 18

10    *Eisen v. Carlisle & Jacqueline*,

11         417 U.S. 156 (1974) .................................................................................... 26

12    *Estrella v. Freedom Fin'l Network*,

13         2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ......................................... 19

14    *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ............................................ 9

15    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................ *passim*

16    *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997) ............................................. 17

17    *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL,

18         2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ............................. 15

19    *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998) ................... 18

20    *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*,

21         Case No. 06-3202,

22         2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ............................. 16

23    *In re Larry's Apartment, L.L.C.*, 249 F.3d 832 (9th Cir. 2001) ......................... 17

24    *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD,

25         2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) .......................... 10

26    *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist.

27         LEXIS 47518 (N.D. Cal. June 20, 2007) ..................................................... 19

28    *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ......................................... 8

1   *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir.

2       2007) ................................................................................................... 22

3   *Mangold v. California Public Utilities Commission*, 67 F.3d 1470

4       (9th Cir. 1995) ................................................................................... 17

5   *Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) ................................. 22

6   *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..................................... 9

7   *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.

8       Cal. 2004) ........................................................................................... 9

9   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.

10      1982) ................................................................................................... 13

11  *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ............................ 21

12  *Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ...................... 13, 16

13  *Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ................................ 8, 9

14  *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS

15      17119 (C.D. Cal. Feb. 25, 2008) ...................................................... 16

16  *Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir.

17      1969) ................................................................................................... 18

18  *Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ....................... 9

19  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .............. 16

20  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D.

21      Cal. 2009) ......................................................................................... 18

22  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ................ 25

23

24  STATE CASES

25  *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004) ......................... 16

26  *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) .................. 16

27  *Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ...................................... 15

28

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ............................................................................ 18, 25

Fed. R. Civ. P. 23(a) .................................................................... 18, 19, 22

Fed. R. Civ. P. 23(a)(1) ......................................................................... 18

Fed. R. Civ. P. 23(a)(2) ......................................................................... 19

Fed. R. Civ. P. 23(a)(4) ......................................................................... 22

Fed. R. Civ. P. 23(b)(3) ......................................................................... 18

Fed. R. Civ. P. 23(c)(2) ................................................................... 26, 27

Fed. R. Civ. P. 23(e) ............................................................................... 8

Fed. R. Civ. P. 23(e)(1) ........................................................................... 9

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................... 8

Fed. R. Civ. Proc. 23 .............................................................................. 5

**STATE STATUTES**

Cal. Lab. Code § 201 ...................................................................... 14, 15

Cal. Lab. Code § 201.3 ........................................................................ 15

Cal. Lab. Code § 201.5 ........................................................................ 15

Cal. Lab. Code § 202 ...................................................................... 14, 15

Cal. Lab. Code § 203 ...................................................................... 14, 15

Cal. Lab. Code § 205.5 ........................................................................ 15

Cal. Lab. Code § 226 ............................................................................ 14

Cal. Lab. Code § 226(a) ....................................................................... 14

Cal. Lab. Code § 226(e) ....................................................................... 14

Cal. Lab. Code § 2698 *et seq.* (Priv. Atty's. Gen. Act (PAGA)) ................. 15, 26

**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ................. *passim*

Manual for Complex Litigation (4th ed. 2004) .......................................... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Mayalinda Bernal seeks preliminary approval of the Joint Stipulation of Settlement and Release,[1] which, if approved, would provide significant monetary relief for approximately 4870 current and former employees of Defendants DaVita Inc., Soledad Dialysis Center, LLC,[2] and Mariah Silva.[3]

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as:  All persons employed by Defendants in California in the position of Patient Care Technician or Reuse Technician at any time between April 6, 2008 until Preliminary Approval of the Settlement by the Court.

(2)    A Gross Settlement Amount of $3,400,000.  The Gross Settlement Amount includes:

(a)    A $2,109,917 Net Settlement Amount (the Gross Settlement Amount minus attorneys' fees and costs, the PAGA payment, Settlement Administration Costs, and the Class Representative Enhancement Payment) which will be allocated to participating Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period and status as either a current or

---

[1] Hereinafter "Settlement" or "Settlement Agreement."  Unless indicated otherwise, all capitalized terms used herein have the same meanings as those defined by the Settlement Agreement.

[2] Including Soledad Dialysis Center, LLC's parent companies and, successors (including DaVita HealthCare Partners Inc.), predecessors, related and affiliated entities (including DVA Renal Healthcare, Inc., DVA Healthcare Renal Care, Inc., and Total Renal Care, Inc.), and their attorneys.

[3] Hereinafter, "DaVita" or "Defendants."  Defendant and Plaintiff are collectively referred to as the "Parties."

former employee of Defendants.[4] **Because the Gross Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Participating Class Members, and without the need to submit claims for payment.**

    (b)    Attorneys' fees and costs of $1,133,333 and $100,000, respectively, to Fitzpatrick, Spini & Swanston; Wanger Jones Helsey PC; and Capstone Law APC (collectively, Plaintiff's counsel");

    (c)    A $3750 payment to the California Labor Workforce Development Agency ("LWDA") pursuant to PAGA;

    (d)    Settlement Administration Costs, currently estimated to be $40,000, to be paid to the mutually agreed upon class action claims administrator Gilardi & Co., LLC ("Gilardi"); and

    (e)    Enhancement Payments of $10,000 to Mayalinda Bernal and $3000 for Diabanza Lusakiovo for their services on behalf of the Settlement Class.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable.  The Parties negotiated the Settlement at arm's length under the guidance of Michael Loeb, a highly respected and experienced wage and hour class action mediator, and provides Class Members relief comparable to that which they might have hoped to win at trial.  The relief offered by the Settlement is impressive when viewed against the recent difficulties encountered by Plaintiffs pursuing wage and hour cases.  *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012).

---

[4] Former employees will receive additional compensation in connection with Plaintiff's claim for waiting-time penalties.

1   Indeed, the proposed relief is arguably superior to the relief that the Class might

2   have obtained after a successful trial because, by settling now rather than

3   proceeding to trial, Class Members will not have to wait (possibly years) for

4   relief, nor will they have to bear the risk of class certification being denied or of

5   Defendants prevailing at trial.

6         As discussed below, the proposed Settlement satisfies all criteria for

7   preliminary settlement approval under California law and falls within the range

8   of reasonableness.  Moreover, the proposed Settlement Class is appropriate for

9   provisional certification.  Accordingly, Plaintiff respectfully requests that this

10  Court grant preliminary approval of the Settlement Agreement.

11  **II.**     **FACTS AND PROCEDURE**

12       **A.**    **A Brief History of California's Wage and Hour Laws**

13        About a century ago, the California Legislature took special notice of the

14  fact that many Californians were working in poor and unhealthy conditions and

15  were not earning living wages.  Recognizing a need to reverse the decline in the

16  quality of life for California workers, the Legislature created the Industrial

17  Welfare Commission ("IWC") and vested it with the authority to police various

18  industries and to promulgate rules, or wage orders, establishing certain industry-

19  specific minimums for compensation and working conditions.  *Martinez v.*

20  *Combs*, 49 Cal. 4th 35, 57 (2010); *see* Cal. Const., art. XIV, § 1 (confirming the

21  Legislature's authority to establish a commission and grant it legislative and

22  other powers over such matters).  In 1916, the IWC, under its "broad statutory

23  authority" (*Industrial Welfare Com. v. Superior Court* 27 Cal.3d 690, 701

24  (1980)), began issuing these wage orders, specifying minimum requirements for

25  wages, hours, and working conditions for various California industries.  *Id*. at

26  700.

27        The Legislature also enacted statutes to directly regulate wages, hours, and

28  working conditions.  Wage and hour claims are therefore governed today by two

complementary and at times overlapping authorities:  18 wage orders adopted by the IWC and the Labor Code enacted by the Legislature.  *Reynolds v. Bement*, 36 Cal. 4th 1075, 1084 (2005); *see* IWC wage orders Nos. 1-2001 to 17-2001 and MW-2007 (Cal. Code Regs., tit. 8, §§ 11000–11170).)

Together, the IWC wage orders and the Labor Code ensure that Californians earn living wages for every hour worked, and that they work in safe and healthy conditions.  Concerning employee health and safety issues in particular, the IWC wages orders and the Labor Code provide that employees may be relieved of their duties to rest for ten minutes and to eat for thirty minutes (*see* IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) and Labor Code §§ 226.7, 512).  These rest and meal period requirements "have long been viewed as part of the remedial worker protection framework."  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1105 (2007).  The right to rest and to eat, as well as other worker rights established by the IWC wage orders and Labor Code, are the subject of this litigation and settlement.

### B.     Overview of the Litigation

DaVita is the dialysis division of DaVita HealthCare Partners Inc., that, through its operating divisions, provides a variety of health care services to patient populations throughout the United States and abroad.  One of the major providers of kidney care in the United States, DaVita delivers dialysis services to patients with chronic kidney failure and end stage renal disease.  As of March 31, 2013, DaVita operated or provided administrative services at 1991 outpatient dialysis centers located in the United States serving approximately 156,000 patients.  The company also operated 41 outpatient dialysis centers located in five countries outside the United States.  DaVita owns and operates approximately 270 kidney dialysis treatment facilities throughout the State of California.

Plaintiff Mayalinda Bernal worked for DaVita as a Reuse Technician from

February 2008 through March 2011, thereafter as a Patient Care Technician through the end of her employment, primarily in the facility located in Soledad, California.  Bernal brought a class and representative action under PAGA on the grounds that Defendants allegedly:  (1) failed to pay overtime in violation of Labor Code sections 510 and 1194; (2) failed to pay meal and rest period premiums in violation of sections 226.7 and 512(a); (3) unlawfully withheld wages in violation of section 216; (4) failed to reimburse for necessary business-related expenses in violation of sections 2802 and 2804; (5) failed to timely pay wages during employment in violation of section 204; (6) failed to provide compliant wage statements in violation of section 226(a); and by virtue of the proceeding (7) engaged in unfair business practices in violation of Business & Professions Code sections 17200, *et seq.*

Following extensive investigation into the claims, Bernal moved for class certification pursuant to Rule 23 on April 15, 2013.  (Dkt. No. 40.)  The motion was based on the allegations that (1) DaVita's rest period policy did not authorize rest periods for "major fractions" of four hour work period and (2) both DaVita's meal period policy and defective form waiver deprived employees of their second meal periods.[5]  While the motion was pending, the Parties entered into settlement negotiations at mediation.  After finalizing the terms of the Settlement, Bernal withdrew her motion on May 28, 2013.

---

[5] Bernal sought to certify three subclass defined as:  (1) all current and former non-exempt employees of DaVita who were paid an hourly wage and who worked for Defendants in California as Re-Use Technicians and/or Patient Care Technicians during the Class Period ("Unpaid Wages Worker Subclass"); (2) all current and former non-exempt employees of DaVita who worked in California as Re-Use Technicians and/or Patient Care Technicians and received a wage statement during the Class Period ("Non-Compliant Wage Statement Subclass"); and (3) all employees of DaVita who were paid an hourly wage, who worked for Defendants in California as Re-Use Technicians and/or Patient Care Technicians and whose employment with Defendants was voluntarily or involuntarily terminated during the Class Period ("Unpaid Wages Former Employee Subclass").

## C.    The Parties Settled the Claims at Mediation

After the exchange of relevant information and evidence, the Parties agreed to enter into private mediation to attempt to resolve the claims in the Action.  (Declaration of Patrick D. Toole ["Toole Decl."] ¶ 13.)  On May 20, 2013, the Parties participated in mediation with Michael Loeb in San Francisco, a respected mediator of wage-and-hour class actions.  (*Id.*)  Mr. Loeb helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.  (*Id.*)  Following arm's-length negotiations, the Parties were eventually able to reach a compromise of the Action.  (*Id.*)  That compromise is set forth in complete and final form in the Settlement Agreement. (*Id.*)  At all times, the Parties' negotiations were adversarial and non-collusive. (*Id.*)  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.

### D.    The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1.    Composition of the Class

The proposed Settlement Class consists of all persons employed by Defendants in California in the position of Patient Care Technician or Reuse Technician at any time between April 6, 2008 until Preliminary Approval of the Settlement by the Court.  (Settlement Agreement ¶ 2.6.)  There are approximately 4870 Settlement Class Members.  (*Id.* at ¶ 2.8.)

#### 2.    Settlement Consideration

Plaintiff and Defendants have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $3,400,000.  (Settlement Agreement ¶ 2.21.)  The Gross Settlement Amount includes:  (1) settlement payments to participating Class Members; (2) attorneys' fees and costs in the amounts of $1,133,333 and $100,000, respectively, to Plaintiff's counsel; (3) a $3750 payment to the California LWDA; (4) Settlement Administration Costs currently estimated at $40,000; and (5) Enhancement Payments to Mayalinda

1  Bernal in the amount of $10,000 and Diabanza Lusakiovo in the amount of

2  $3000. (*Id.* at ¶¶ 2.18, 2.25, 2.35, and 6.6.)

3      Subject to the Court's approval of attorneys' fees and costs to Class

4  Counsel, the PAGA Payment, Settlement Administration Costs, and

5  Enhancement Payments, the Net Settlement Amount will be available for

6  distribution to Class Members according to the formula below.

### 3.    Formula for Calculating Settlement Payments

8      The entire Net Settlement Amount will be divided among the participating

9  Class Members as follows.  Each Class Member's Claim Amount shall be

10 determined by a point system, whereby each Class Member is awarded one (1)

11 point for each workweek of active employment worked during the Class Period,

12 with an additional ten (10) points awarded to each terminated employee.[6]

13 (Settlement Agreement ¶ 6.10.1.)  For purposes of determining the amount of

14 points for each Class Member, the termination date shall be based on termination

15 status as of May 20, 2013.  (*Id.*)  Because the Gross Settlement Amount is non-

16 reversionary, 100% of the Net Settlement Amount will be paid to Participating

17 Class Members, and without the need to submit claims for payment.  (Settlement

18 Agreement ¶ 2.22.)

### 4.    Release by Class

20     Contingent upon full and final payment by Defendants of the Gross

21 Settlement Amount, each Class Member will be deemed to have fully, finally,

---

[6] Each Class Member's points will then be divided by the total number of points for all Class Members, and the resulting fraction then multiplied by the Net Settlement Amount.  (Settlement Agreement ¶ 6.10.) Workweeks shall be defined as the total length of service as a non-exempt hourly Patient Care Technician or Reuse Technician in California (measured in days) of Defendants divided by seven.  Active employment shall be defined as any workweek in which a Class Member reported hours worked on behalf of Defendants.  (*Id.*) The calculation of a Class Member's workweeks and a determination as to whether a Class Member was actively employed in a particular workweek shall be construed from Defendants' records.  (*Id.*)

1  and forever released the Releases from all Released Claims.  (Settlement
2  Agreement ¶ 2.32.)

3  **III.   ARGUMENT**

4        **A.    The Proposed Class Action Settlement Should Receive**
5              **Preliminary Approval**

6              **1.    Courts Review Class Action Settlements to Ensure That**
7                    **the Terms Are Fair, Adequate, and Reasonable**

8        Class action settlements must be approved by the court and notice of the
9  settlement must be provided to the class before the action can be dismissed.  Fed.
10 R. Civ. P. 23(e)(1)(A).  To protect absent class members' due process rights,
11 approval of class action settlements involves three steps:

12       1.     Preliminary approval of the proposed settlement, including (if the
13 class has not already been certified) conditional certification of the class for
14 settlement purposes;

15       2.     Notice to the class providing them an opportunity to exclude
16 themselves; and

17       3.     A final fairness hearing concerning the fairness, adequacy, and
18 reasonableness of the settlement.  *See* Fed. R. Civ. P. 23(e)(2); Manual for
19 Complex Litigation § 21.632 (4th ed. 2004).

20       At preliminary approval, the Court first determines whether a class exists.
21 *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).  Then, the Court
22 evaluates whether the settlement is within the "range of reasonableness," and
23 whether notice to the class and the scheduling of a final approval hearing should
24 be ordered.  *See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*,
25 section 7.20 (4th ed. 2002) § 11.25.  "Whether a settlement is fundamentally fair
26 within the meaning of Rule 23(e) is different from the question whether the
27 settlement is perfect in the estimation of the reviewing court."  *Lane v.*
28 *Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

The law favors the compromise and settlement of class action suits.  *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .  The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Thus, the Court must determine whether a settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1).

To make this determination at preliminary approval, the Court may consider some or all of the following factors:  the extent of discovery completed, and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel.  *See Stanton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004), *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate.  Newberg, § 11:25.

### 2.    The Settlement Was Reached Through Arm's-Length Bargaining

The fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013).

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement.  Bernal was represented by Fitzpatrick Spini & Swanston, Wanger Jones Helsley PC, and Capstone Law APC.  Plaintiff's counsel regularly litigate wage and hour claims through certification and on the merits.  Throughout the course of their respective careers, Plaintiff's counsel have successfully certified class actions by way of contested motions, and have achieved final approval of dozens of class action settlements.

DaVita was represented by Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree").  Ogletree has a significant wage and hour and employment law defense practice in California, and has a reputation for providing not only effective counsel during litigation, but also training and consultation in lieu of litigation.

### 3.    The Settlement Was Based on Facts Uncovered Through Investigation, Formal Discovery, and Preparation for Mediation

This action has been heavily litigated and investigated.  At the outset, Plaintiff's counsel served multiple forms of written discovery, and exhausted their efforts to obtain the requested discovery.  For example, Defendants served their Rule 26 Initial Disclosures on September 24, 2012.  Defendants did not produce time-keeping and payroll date records until November 20, 2012.

Approximately six months later, Defendants served their First Supplemental Initial Disclosures on April 18, 2013.  Supplemental disclosures were then served on or about April 4, 11, 18 & 29, 2013 and on May 6 and 7, 2013.  On April 4, 2013, Defendants produced address contact information for 3400 individual putative class members, and all the phone contact information was provided four days later, on April 8, 2013.  (Toole Decl. ¶ 7.)

Plaintiff's counsel also took multiple depositions of Defendants' corporate representatives and employees, and defended the depositions of putative Class Members.  The depositions required Plaintiff's counsel to travel to:

- Denver, Colorado for the depositions of DaVita's Vice President of People Services (March 6, 2013), the interim Vice President of Recruiting (March 7, 2013), the Director of Global Compensation (March 12, 2013), and the Director of Employee Relations and Labor Relations (March 13, 2013);

- Tacoma, Washington for the deposition of the Director of Payroll (March 19, 2013);

- San Francisco, California for the deposition of the relevant People Services Manager (February 19, 2013) and the second session of the interim Vice President of Recruiting's deposition (March 29, 2013), and to defend the first session of plaintiff Mayalinda Bernal's deposition (October 30, 2012);

- Paso Robles, California to defend the depositions of two potential members of the putative class (May 17, 2013);

- Sacramento, California to defend the depositions of two putative class members (May 6, 2013);

- Oakland, California to defend the deposition of another putative class member (May 6, 2013);

- Los Angeles, California, to defend the deposition of class

representative Diabanza Lusakiovo (May 6, 2013), to take the

deposition of defense expert Robert Crandall (March 26, 2013), and

to defend the deposition of defense expert Sean Chasworth (March

26, 2013);

- Salinas, California, to take the depositions of two DaVita managers

(February 20 and 21, 2013), and to defend the second deposition

session of plaintiff Mayalinda Bernal (February 21, 2013).

(*Id.* at ¶ 8.)

Plaintiff's counsel likewise expended considerable time preparing for the depositions, and in drafting motions to compel further testimony and document production in connection with three of the witness depositions.  There were also disputes that arose out of these depositions that required further work by Plaintiff's counsel.  For example, Plaintiff's counsel asserts that defense counsel had raised improper objections.  The parties then engaged in efforts to resolve these discovery disputes, and ultimately Plaintiff's counsel prepared and filed multiple motions to compel additional depositions and document production. (*Id.* at ¶ 9.)

Plaintiff's counsel's certification efforts were equally extensive. Plaintiff's counsel obtained and reviewed Defendants' meal and rest period policies, the relevant internal operational policies, and collaborated with Class Members in preparing their declarations in support of the motion for class certification.  (*Id.* at ¶ 10.)

Based on the forgoing investigation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendants, and potential appellate issues.  (*Id.* at ¶ 12.)

### 4.      Counsel Is Experienced In Similar Litigation

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement.  Plaintiffs are represented by Fitzpatrick, Spini & Swanston; Wanger Jones Helsey PC; and Capstone Law APC.  Plaintiff's counsel regularly litigate wage-and-hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions.  (*See generally* Declaration of Patrick D. Toole, Declaration of Bernard James Fitzpatrick, Declaration of Charles Swanston, and Declaration of Raul Perez).

### 5.      The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery.  *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

Plaintiff's counsel were confident that class-wide liability could have established through common proof.  However, Plaintiff's counsel were cognizant of the risks of continued litigation, as illustrated by the following cases:  *Brown v. Federal Express Corporation,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to

1    certify class action because individual issues predominated when different

2    employee stations provided different practices with respect to meal periods);

3    *Chaaban v. Wet Seal, Inc.*, 2012 Cal. App. Unpub. LEXIS 2560 (Cal. Ct. App.

4    Apr. 4, 2012) (trial court denied certification of rest break claims where plaintiffs

5    offered no common method of distinguishing between instances when employees

6    were not permitted to take breaks); and *Lanzarone v. Guardsmark Holdings,*

7    *Inc.*, 2006 U.S. Dist. LEXIS 95785 * 11-13 (C.D. Cal. 2006) (denying motion

8    for class certification when common questions did not predominate because

9    varied meal and rest periods policies varied from shift to shift).

10          Plaintiff's counsel were equally confident that they could have certified

11   the rest break claim.  However, Plaintiff's counsel took stock in DaVita's

12   contention that its rest break policy was compliant on its face with California

13   law, as the policy—which was drafted to apply to treatment centers throughout

14   the United States—provided: "Except as otherwise provided by law, teammates

15   should be given a ten minute rest period for every four hours worked."

16          Plaintiff also alleged that Defendants had a regular practice of providing

17   employees non-compliant wage statements in violation of Labor Code section

18   226(a).  However, claims for violation of California's wage statement law (Cal.

19   Lab. Code § 226(a)) are sometimes vulnerable to attack by summary judgment,

20   as defendants commonly argued that section 226(e) provides a right of recovery

21   only for employees "suffering injury" as a result of an employer's failure to

22   comply with section 226(a).  Specifically, the statute provides that only "[a]n

23   employee **suffering injury** as a result of a knowing and intentional failure by an

24   employer to comply with" the statute may recover damages.  Cal. Lab. Code §

25   226(e) (emphasis added).

26          Based on the preceding allegations, Plaintiff also alleged that Defendants

27   failed to pay former employees all wages owed upon termination of employment.

28   (See Cal. Lab. Code §§ 201-202.)  Labor Code section 203(a) prescribes the

Page 14

1   remedy for that alleged failure:

2       If an employer willfully fails to pay, without abatement or
        reduction, in accordance with Sections 201, 201.3, 201.5, 202,
3       and 205.5, any wages of an employee who is discharged or
        who quits, the wages of the employee shall continue as a
4       penalty from the due date thereof at the same rate until paid or
        until an action therefor is commenced; but the wages shall not
5       continue for more than 30 days.

6       Plaintiff recognized, however, that because section 203 arguably requires a

7   wilful failure to pay wages, and in light of the difficulties associated with

8   establishing a common policy or practice of paying wages after they are due, the

9   value of the claim had to be discounted.

10      Accordingly, the high risk, expense, and complex nature of a potentially

11  lengthy class action trial support final approval of this class action settlement at

12  this stage of the litigation.

13          **B.    The Proposed PAGA Payment Is Reasonable**

14      Pursuant to the Settlement Agreement, $3750 from the Gross Settlement

15  Amount will be paid directly to the LWDA in connection with the PAGA claim

16  asserted by the Class.  (Settlement Agreement ¶ 2.25.)  This result was reached

17  after good-faith negotiation between the Parties.  Where PAGA penalties are

18  negotiated in good faith and there is no indication that the amount was the result

19  of self-interest at the expense of other Class Members, such amounts are

20  generally considered reasonable.  *Hopson v. Hanesbrands Inc.*, No. CV-08-0844

21  EDL, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009) (approving

22  a PAGA settlement of 0.3% or $1500); *see also Nordstrom Com. Cases*, 186 Cal.

23  App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving

24  a settlement which does not allocate any damages to the PAGA claims.").

25          **C.    The Proposed Payments to the Class Representatives Are**
                    **Reasonable**

26

27      Payments to named plaintiffs for their services as class representatives are

28  customary and generally approved.  *See Van Vranken v. Atl. Richfield Co.*, 901

F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing the case); *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three  class representatives).  The incentive award should be approved so long as it is not so high [as] to create a conflict of interest between the representative and class members, or be divorced from the actual value the representative provided to the action.  *Rodriguez v.* West, 463 F.3d at 959-61.

Here, Mayalinda Bernal assisted Plaintiffs' counsel greatly over the course of the litigation.  For example, Bernal:  (1) provided documents to assist Plaintiff's counsel in their investigation and prosecution of this case; (2) assisted Plaintiff's counsel in preparing a declaration on her behalf in conjunction with the class certification motion; (3) assisted Plaintiff's counsel in marshalling the evidence necessary to prosecute the claims on behalf of the Class; (4) allowed her personnel files to be divulged during the course of the lawsuit; (5) subjected herself to reputational risk by initiating a lawsuit against her former employer; and (6) regularly consulted with Plaintiff's counsel throughout litigation to stay apprised of developments in the case.

Although not an original Plaintiff to the litigation, Diabanza Lusakiovo, as a putative Class Member, and formerly a Plaintiff[7] in a related action against DaVita, expressed a strong interest in the litigation, and a desire to assist

---

[7] *Lusakiovo v. DaVita Healthcare Partners Inc.*, Case No. 2:13-cv-00419-JFW-AGR (C.D. Cal. Jan. 18, 2013).

1  Plaintiff's counsel in the prosecution of the case, and provided Plaintiff's

2  Counsel with important insight into the way DaVita implemented its policies.

3  His willingness to join the litigation as an additional Class Representative

4  ensures that all members of the prospective class are well represented.  This, and

5  his willingness to execute a general release of claims in favor of DaVita, entitles

6  him to a representative Enhancement Payment of $3000.  Based on their services

7  to the Class, Plaintiff's counsel fully endorses the $10,000 class representative

8  Enhancement Payment for Bernal and $3000 to Lusakiovo as fair, reasonable,

9  and deserved.

### D. The Negotiated Attorneys' Fees and Costs Are Reasonable

10         The purpose of an attorneys' fee award in class action litigation is to

11  reward counsel who took the risk of non-payment and invested in a case that

12  achieved a substantial positive result for the class.  California courts routinely

13  award attorneys' fees equalling one-third or more of the potential value of the

14  common fund.[8]  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)

15  ("Empirical studies show that, regardless whether the percentage method or the

16  lodestar method is used, fee awards in class actions average around one-third of

17  the recovery.").  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in

18  Class Action Settlements:  An Empirical Study, J. of Empirical Legal Studies,

19  Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action

20  litigation nationwide have come to a similar conclusion that a one-third fee is

21

22

23         [8] California law will govern Bernal's request for attorneys' fees and costs.
*See*, *e.g.*, *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-38 (9th Cir. 2001)

24  (holding that, in a diversity case, the law of the state in which the district court
sits determines whether a party is entitled to attorneys fees, and the procedure for

25  requesting an award of attorney fees is governed by federal law); *Helfand v.
Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) (a federal court sitting in diversity

26  applies the law of the forum state regarding an award of attorneys' fees.);
*Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir.

27  1995) ("[t]he method of calculating a fee is an inherent part of the substantive
right to the fee itself, and a state right to an attorneys' fee reflects a substantial

28  policy of the state.").

consistent with market rates).

At final approval, Plaintiff will, by separate motion, seek Court-approval of attorneys' fees and costs of $1,133,333 (one-third of the Gross Settlement Amount) and $100,000, respectively.

### E.   Conditional Class Certification Is Appropriate for Settlement Purposes

#### 1.   The Proposed Class Meets the Requirements of Rule 23.

Before granting preliminary approval of the Settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed settlement class is appropriate.

#### 2.   The Proposed Class Is Sufficiently Numerous and Ascertainable

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class sufficiently numerous if it consists of 40 or more members.  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (numerosity satisfied with class of 40 individuals); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (finding a purported class of forty members sufficient to satisfy numerosity); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, *19 (N.D. Cal. June 20, 2007) ("numerosity may be

1 presumed when the class comprises forty or more members").

2       Here, the proposed Settlement Class all persons employed by Defendants

3 in California in the position of Patient Care Technician or Reuse Technician at

4 any time between April 6, 2008 until Preliminary Approval of the Settlement by

5 the Court.  Based on information provided during discovery, approximately 4870

6 persons comprise the Settlement Class.

7         **3.**      **There are Questions of Law and Fact that Are Common to**

8                 **the Class**

9       The second Rule 23(a) requirement is commonality, which is satisfied "if

10 there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

11 The "commonality requirement has been 'construed permissively,' and its

12 requirements deemed minimal."  *Estrella v. Freedom Fin'l Network*, 2010 U.S.

13 Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150

14 F.3d 1011, 1019-1020 (9th Cir. 1998).

15       The rest period claims in this case are appropriate for certification because

16 DaVita's written rest period policy is defective on its face.  The California

17 Supreme Court ruled in *Brinker v. Superior Court*, 56 Cal.4th 1004 (2012), that

18 California's rest period laws require employers to authorize and permit two rest

19 periods for employees who work between six and eight hours in a day, three rest

20 periods for employees who work between 10 and 12 hours in a day and four rest

21 periods for employees who work between 14 and 16 hours in a day.  An

22 employer authorizes and permits the requisite number of rest periods by creating

23 and implementing a policy that provides for such rest periods.  In *Brinker*, the

24 California Supreme Court reversed an appellate court that failed to recognize that

25 an employer had violated its obligation do so when it formulated a policy that

26 authorized rest periods only every four hours, omitting any reference to "major

27 fraction thereof."

28       It is Plaintiff's contention that the rest period policy in the present case is

identical to the employer's rest period policy in *Brinker*, and DaVita's internal documents demonstrate that some of defendants' managers were trained on what Plaintiff contends is this defective policy and implemented the policy in a manner that arguably deprived the putative class members of rest periods on hundreds of thousands of occasions.  It is Plaintiff's belief that common issues questions of law and fact include:

- Does DaVita's written rest period policy authorize and permit the number of rest periods required by California law?
- Do DaVita's wage statements violate Labor Code §226 by failing to report entitlements to rest period premiums?
- Did DaVita's failure to timely pay rest and meal period premiums to its employees violate Labor Code §§ 203 and 204?
- Are DaVita's rest period practices unlawful, fraudulent or unfair business practices under Business & Professions Code §§ 17200, *et seq.*?

While the rest period issues are tightly focused around class-wide violations flowing from one obvious defect in DaVita's policy, the meal period issues in this case are focused around several arguable flaws in DaVita's meal period policy and the waiver form DaVita required most of its employees to sign, which plaintiffs contend distorted second meal period rights beyond what the law will allow.  It is Plaintiff's contention that DaVita's meal period policy failed to comply with California law in several important respects.  The alleged deficiency that has the most immediate relevance to the present case concerns the alleged failure to authorize a second meal period that would begin before more than 10 hours had been worked.  This alleged defect was exacerbated by the written waiver that Defendants presented to employees, requiring them to waive second meal periods for shifts between 10 and 12 hours, and, for shifts longer than 12 hours, presenting them with an option to either take the meal

period when practical or take the meal period at the end of their workday.  In this manner, Defendants arguably improperly secured second meal period waivers from the Class Members that were involved because (1) they failed to accurately inform the class members of their rights and (2) they resulted in a de facto waiver of second meal periods for shifts exceeding 12 hours, which is expressly forbidden under Labor Code section 512.  California law requires second meal periods to begin before more than 10 hours have been worked.  Common questions of law and fact therefore include:

- Does DaVita's written meal period policy provide meal periods that comply with California law?
- Does DaVita's second meal period waiver form result in invalid waivers of second meal periods?
- Do DaVita's wage statements violate Labor Code §226 by failing to report entitlements to meal period premiums?
- Did DaVita fail to timely pay meal period premiums to its employees in violation of Labor Code §§ 203 and 204?
- Are DaVita's meal period practices unlawful, fraudulent or unfair 22 business practices under Business & Professions Code §§ 17200, *et seq.*?

### 4. The Putative Class Representatives' Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718,

734 (9th Cir. 2007).  Thus, typicality is "satisfied when each class member's
claim arises from the same course of events, and each class member makes
similar legal arguments to prove the defendant's liability."  *Armstrong v. Davis*,
275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372,
376 (2nd Cir. 1997)).

Bernal and Lusakiovo's claims are typical of the claims held by the class
members.  Bernal and Lusakiovo both worked as Patient Care Technicians and
Reuse Technicians.  DaVita applied its rest and meal period polices equally to
both positions, and Bernal and Lusakiovo allegedly suffered meal and rest period
violations as a direct result of those policies.  Moreover, Bernal and Lusakiovo
signed meal period waivers at the beginning of their employment and allegedly
suffered meal period violations throughout their employment.  (*See generally*
Declaration of Mayalinda Bernal, Declaration of Diabanza Lusakiovo).

### 5.   Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties
will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.
23(a)(4).  This requirement is satisfied if: (1) the proposed representative
Plaintiffs do not have conflicts of interest with the proposed class, and (2)
Plaintiffs are represented by qualified and competent counsel.  *Hanlon*, 150 F.3d
at 1020.

Bernal and Lusakiovo's interests are entirely coextensive with the interests
of the Settlement Class.  Bernal and Lusakiovo claimed they were injured by the
same company-wide practices to which other members of the Class are subject,
and they seek the same relief.  Bernal and Lusakiovo have already demonstrated
their ability to advocate for the interests of the Class by initiating separate
actions against DaVita and undertaking considerable discovery on behalf of
Class Members.  Further, Plaintiffs' counsel, Fitzpatrick, Spini & Swanston;

Wanger Jones Helsey PC; and Capstone Law APC, regularly engage in major complex litigation and have extensive experience in class action lawsuits that are similar in size, scope, and complexity to the present case.  Plaintiff's counsel has diligently and competently prosecuted this complex action in a challenging and evolving legal landscape for class actions.

### 6.      Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.

Plaintiff's rest break claim is based on the allegation that Defendants maintained a written policy that allegedly permitted rest breaks for four hour work periods only, and did not permit a rest break for work periods that were "major fractions" of four hours, as required by law.  As a consequence, Plaintiff and Class Members were allegedly denied rest periods on days they worked between six and eight, 10 and 12, and 14 and 16 hours—shifts that contained "major fractions" of four hour periods.  This involved 329,850 shifts worked by 3,525 employees, or 97% of all employees.  Labor Code § 226.7 prohibits an employer from requiring employees to work during any meal or rest period provided mandated by an IWC Wage Order. Lab. Code § 226.7(a).  Specific requirements for rest periods are detailed in Wage Orders promulgated by the Industrial Wage Commission, the pertinent one here being Wage Order No. 4, which provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof

8 Cal. Code of Regs. § 11040, subd. 12(A) (emphasis added).

Cases decided after *Brinker* confirm that the question of whether an

Page 23

employer has satisfied its obligation to provide rest periods and meal periods is answered by the employer's policy.  *Bradley v. Networkers International, LLC*, 211 Cal. App. 4th 1129, 1144-1145 (2012)), demonstrates that the analysis mandated by *Brinker* requires the court to first review the employer's policy in order to determine whether the employer has provided the required breaks, and, if the employer has not, no further inquiry is required and common issues clearly predominate.  Addressing the employer's argument that individual issues predominate because numerous "mini trials" would be necessary to resolve questions about which employees missed breaks and whether breaks were missed because of the policy, the *Bradley* court responded:

> However, this argument conflicts with Brinker's clear holdings that for meal breaks, an employer has an obligation to relieve its employee of all duty, permit the employee to take an uninterrupted 30–minute break, and to not impede or discourage the employee from doing so. (Brinker, supra, 53 Cal.4th at p. 1040, 139 Cal.Rptr.3d 315, 273 P.3d 513.) Similarly, an employer has an obligation to provide a rest break, and if the employer fails to do so, the employer cannot claim the employee waived the break. (53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513.) Under the logic of these holdings, when an employer has not authorized and not provided legally-required meal and/or rest breaks, the employer has violated the law and the fact that an employee may have actually taken a break or was able to eat food during the work day does not show that individual issues will predominate in the litigation.

*Id.* at 1151 (emphasis added).

Like their rest period claims, the class member's meal period claims are directed toward a written policy that allegedly fails to authorize meal periods that comply with California law.  While there are multiple problems with the policy, the problem giving rise to the claims in this case is the policy's failure to authorize second meal periods that begin before more than more 10 hours have been worked and Defendants' handling of the second meal period waiver. Therefore, Plaintiff contends that common issues predominate in the meal period claims because the method for adjudicating these claims applies a liability

1   analysis that focuses on Defendants' policies.

2       **7.      Class Settlement Is Superior to Other Available Means of**

3       **Resolution**

4       Similarly, plaintiffs contend that resolving all Class Members' claims

5   through a single class action is superior to a series of individual lawsuits.  "From

6   either a judicial or litigant viewpoint, there is no advantage in individual

7   members controlling the prosecution of separate actions. There would be less

8   litigation or settlement leverage, significantly reduced resources and no greater

9   prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the

10  Settlement negotiated on behalf of the Class demonstrates the advantages of a

11  collective bargaining and resolution process.

12      Addressing the allegations through a class action is superior to individual

13  litigation or any alternative methods that may exist.  This action was filed

14  precisely because Plaintiff believed those alternatives, such as filing complaints

15  with the LWDA, would have proven ineffective in addressing the problem on a

16  class-wide basis.  Additionally, although the value of the claims is not

17  insignificant, the amount in controversy is not nearly enough to incentivize

18  individual action.  *See Wolin*, 617 F.3d at 1175 ("Where recovery on an

19  individual basis would be dwarfed by the cost of litigating on an individual basis,

20  this [superiority] factor weighs in favor of class certification.").  As the class

21  action device provides the superior means to effectively and efficiently resolve

22  this controversy, and as the other requirements of Rule 23 are each satisfied,

23  certification of the Settlement Class proposed by the Parties is appropriate.

24      **F.      The Proposed Class Notice Adequately Informs Class Members**

25      **About The Case And Proposed Settlement**

26      The proposed class settlement notice and claims administration procedure

27  satisfy due process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure

28  requires the Court to direct the litigants to provide Class Members with the "best

notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule 23(c)(2), notice by mail provides such "individual notice to all members."  *Id.*  Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable."  *Id.* at 175.

The Notice of Class Action Settlement ("Notice") jointly drafted and approved by the Parties, provides Settlement Class Members with all required information so that each Member may make an informed decision regarding his or her participation in the Settlement.  The Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit requests for exclusion or objections; the date for the final approval hearing; the formula used to calculate settlement payments; the Enhancement Payments; the PAGA Payment; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out.  Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

In summary, the Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  Further, the Notice Packet states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has yet to be made.  Accordingly, the Notice Packet complies with the standards of fairness, completeness, and neutrality required of a settlement class notice

disseminated under authority of the Court.  Rule 23(c)(2)and (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

The Parties have agreed to use Gilardi as the Claims Administrator. Within twenty business days of preliminary approval by the Court, DaVita will provide to the Claims Administrator a complete list of all Settlement Class Members ("Class List").  (Settlement Agreement ¶ 6.3.1.)  The Class List will include each Settlement Class Member's full name, most recent mailing address and telephone number, Social Security number, and all other necessary information to administer the settlement.  (*Id*.)

The Claims Administrator will mail the Notice to all Settlement Class Members via first class United States mail.  (*Id*.)  Before mailing the Notice, the Claims Administrator will verify the addresses produced by DaVita for each Class Member using the National Change of Address Database, or a similar database.  (*Id*.)  In the event Notices are returned as undeliverable, the Claims Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id*. at ¶ 6.3.2.)  This method was negotiated by the Parties to maximize the Class Member response rate while ensuring cost effective administration of the Settlement.

The last step in the settlement approval process is the Final Approval Hearing, at which time the Court may hear all evidence and arguments necessary to evaluate the Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer arguments in support of settlement approval.  Class Members may be heard in support of or in opposition to the Settlement.  The Parties tentatively request that this hearing be held on January 9, 2014.

## IV.   CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that

1 | provides relief that likely would never have been realized but for this class
2 | action.  Accordingly, Plaintiff moves the Court to preliminarily approve the
3 | Settlement Agreement; direct that the Notice Packet be mailed to Class
4 | Members; and preliminarily approve the incentive awards claims administration
5 | costs.  Additionally, the Parties request a Final Approval hearing be set for
6 | January 9, 2014, or the earliest available date that the Court's calendar will
7 | accommodate.

Dated:  July 19, 2013                    Respectfully submitted,

Capstone Law APC

By: _____

Raul Perez
Shooka Moallem

Bernard James Fitzpatrick
Charles Swanston
Fitzpatrick Spini & Swanston

Patrick Darryn Toole
John Patrick Kinsey
Wanger Jones Helsley PC

Attorneys for Plaintiff Mayalinda Bernal